**UNITED STATES DISTRICT COURT**　　　　**EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:17-CR-26(1) |
| | § | |
| JOSHUA TRAMMELL | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Joshua Trammell's ("Trammell") Motion Under 3582(c)(1)(A) Seeking Compassionate Release/Home Confinement due to the presence of COVID-19 at his facility (#36). The Government filed a response in opposition (#37). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.　　Background

On February 9, 2017, a grand jury in the Eastern District of Texas returned an Indictment charging Trammell with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). On May 24, 2017, Trammell entered a plea of guilty to the offense pursuant to a non-binding plea agreement. On December 12, 2017, the court sentenced Trammell to 37 months' imprisonment, followed by a 3-year term of supervised release. The sentence was to run consecutively to six undischarged sentences of imprisonment imposed by the 366th District Court of Collin County, Texas. Trammell is currently housed at Federal Correctional Institution Forrest City Medium, located in Forrest City, Arkansas ("FCI Forrest City Medium"). Trammell's projected release date is May 4, 2022.

II.     Analysis

On December 21, 2018, President Trump signed the First Step Act of 2018 into law.  *See*

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18

U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a

defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking

compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior

to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for

compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb.

27, 2014) (denying petitioner's motion for compassionate release because no motion for his release

was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means

to appeal the BOP's decision not to file a motion for compassionate release on the defendant's

behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*,

No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").  Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 2020 WL 5249369, at *1 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his

administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Trammell is foreclosed from obtaining relief because, as Probation confirms, he has not submitted a request for compassionate release to the warden of the facility where he is housed. *See Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Accordingly, at this time, the court does not have the authority to grant the relief Trammell requests. Moreover, even if Trammell had

complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

As grounds for relief set forth in his motion, Trammell asserts that his underlying health conditions, specifically Asthma and Hepatitis C, for which he is taking a medication (Mavyret) that he contends is known to lower the immune system, render him especially vulnerable to COVID-19. He also maintains that the court should take into consideration his 12-year-old son's mental health issues, alleging that his son is currently on medication and has been hospitalized for depression and attempts at harming himself. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

In the case at bar, Trammell, age 35, attaches no medical records or other documentation in support of his health claims. Although he asserts in his motion that a copy of his medical history is attached, there is no such attachment accompanying his motion. A review of Trammell's Presentence Investigation Report ("PSR"), prepared on October 6, 2017, reveals that when Probation inquired about his physical condition, he replied that he has allergy-induced asthma which he treats with Albuterol breathing treatments, as needed, and that he began taking high blood pressure medication while detained at the Collin County Detention Center. He also

6

reported taking medication for bipolar disorder and depression.  Trammell made no mention of being diagnosed with Hepatitis C or taking any medication for that condition.  In his current motion, he makes no reference to suffering from high blood pressure.  Probation reported that in October 2017, Trammell stood 5 feet 9 inches tall and weighed 250 pounds, making his Body Mass Index 36.9, well above 30, the threshold for obesity, but there is no information in the record regarding his current weight.

Thus, Trammell's medical condition does not meet the criteria for compassionate release listed in the guidelines.  His reported afflictions are not terminal (with an end of life trajectory within 18 months), nor do they substantially diminish his ability to provide self-care.  Probation acknowledges that Trammell has allergy-induced asthma which is treated with Albuterol, but points out that he is classified by the BOP as a Care Level 1 inmate (less than 70, generally healthy, with limited medical needs) and has no medical restrictions.  In any event, Trammell's health issues evidently did not hamper or prevent him from committing the offense of conviction or a series of crimes dating back to age 15, as set forth in the PSR.  Therefore, Trammell has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence.

Moreover, "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).  Where, as here, the defendant has a significant criminal history, the district court has discretion to deny compassionate release after weighing the evidence.  *Id.* at 693-94.  In addition, granting Trammell compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the United States Court

of Appeals for the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's not yet having served a significant portion of his sentence. *Id.* at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.* In the instant case, releasing Trammell after he has served only 14 months, approximately 37%, of his 37-month sentence, would similarly minimize the impact of his crime and the seriousness of his offense.

Although the USSG acknowledges that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, it specifies the following qualifying conditions: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii). Here, Trammell's concerns about his son's mental health problems do not satisfy either of these conditions. It is apparent that his son has an available caregiver, the child's mother and Trammell's wife, Kimberly Trammell, to whom he refers the court regarding access to his son's medical records. Hence, Trammell fails to meet the requirements for family circumstances that establish extraordinary and compelling reasons.

8

Trammell's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 cmt. n.1(D).  Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present.  *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

Here, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Trammell for any "other" reason.  In exercising its discretion, the court also finds that no extraordinary and compelling reasons exist in relation to Trammell's situation.  Furthermore, in view of his extensive criminal history, the court cannot conclude that Trammell is not a danger to the safety of any other person or to the community, if released.  In fact, Probation calculated his criminal history score as 29, more than twice the 13 points needed for placement in the highest criminal history category of VI.

Hence, Trammell has not exhausted his administrative remedies or demonstrated that he satisfies other requirements of the First Step Act regarding compassionate release.

Trammell expresses concerns regarding the spread of COVID-19 among the prison population. Nevertheless, as of November 29, 2020, the figures available at www.bop.gov list 11 inmates (out of a total inmate population of 1,102) and 18 staff members at Forrest City Medium as having confirmed positive cases of COVID-19, 102 inmates and 5 staff members who have recovered, and 0 inmates who have succumbed to the disease. Therefore, although Trammell expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in

10

conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).  Thus, Trammell has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to release him from prison.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94.  The nature and circumstances of Trammell's offense of conviction entail his unlawful possession of firearm by a convicted felon.  As set forth in the PSR and the Factual Basis, Trammell sold a Taurus .45 caliber handgun to a pawn shop in McKinney, Texas, in November 2016, as confirmed by video surveillance footage obtained from the business.  At the time, Trammell had previously been convicted of multiple felonies.  In the Factual Basis, Trammell admitted that he knew his possession of the firearm was prohibited by law because he was a convicted felon.  McKinney police officers were investigating burglaries that had occurred in the area in which Trammell was identified as a suspect.  In early December 2016, officers conducted a traffic stop on his vehicle and, during the execution of a search warrant, discovered .45 caliber handgun ammunition, various items of personal identification that did not belong to him, numerous credit cards in the name of another individual, two checkbooks that belonged to others both of which contained a check in the same handwriting that showed him as the payee, and his cell phone in the vehicle.

11

Upon his arrest, Trammell was placed in the back of a patrol car where he became very upset, began kicking the windows, slamming his head against the windows, and stating that he would "knock himself out." A search of his phone revealed several photographs of the Taurus pistol, a loaded magazine next to the pistol, methamphetamine on a digital scale weighing 5.41 grams, and a truck that had been reported stolen as well as text messages from him trying to sell the truck.

Trammell's criminal history begins at age 15 and includes prior convictions for theft of property (10), assault of a public servant, evading arrest or detention (2), assault causing bodily injury/family member (2), resisting arrest, burglary of a building (3), evading arrest or detention with a vehicle, unauthorized use of a vehicle (2), possession of a controlled substance, fraudulent use or possession of identifying information, and credit/debit card abuse. He also failed to comply with previous terms of probation, and his probation was revoked on 10 occasions. In addition, Trammell has a history of substance abuse, including the daily consumption of a 12-pack of beer from age 13 until his arrest, the use of marijuana while a teenager, and the daily use of methamphetamine for a number of years from age 13 and his using it intravenously at the time of his arrest. Hence, the court cannot conclude that Trammell would not pose a danger to any other person or to the community, if released from prison.

Furthermore, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See Collins*, 2020 WL 1929844,

at *3.  The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.  Since March 26, 2020, the BOP has placed 18,027 inmates on home confinement.  The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).  The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement.  18 U.S.C. § 3621(b); *United States v. Donnell*, ___ F. Supp. 3d ___, No. 4:10-CR-65-SDJ-CAN, 2020 WL 5939095, at *7 (E.D. Tex. Aug. 4, 2020); *Ambriz v. United States*, 465 F. Supp. 3d 630, 633 (N.D. Tex. 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways."  The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease.  Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any

verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Trammell's track record is abysmal.

In short, Trammell has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

III.  Conclusion

In accordance with the foregoing analysis, Trammell's Motion Under 3582(c)(1)(A) Seeking Compassionate Release/Home Confinement (#36) is DENIED.

14

SIGNED at Beaumont, Texas, this 30th day of November, 2020.


_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE